# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5777 | **DATE** | 10/20/2004 |
| **CASE TITLE** | Goldsmith vs. Flynn | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, the City of Chicago's motion for summary judgment is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 2 1 2004 date docketed | |
| | Docketing to mail notices. | | | 106 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATIMAHMUD GOLDSMITH,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>CHICAGO POLICE OFFICERS  )<br>BRIAN MURPHY and ROBERT KANE, #13860,  )<br>and COLLEEN MURPHY,  )<br>MEGHAN MINGY, MARY MALOOLY, and  )<br>the CITY OF CHICAGO,  )<br>)<br>Defendants.  ) | No. 02 C 5777<br><br>Judge John W. Darrah<br><br>OCT 21 2004 |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Katimahmud Goldsmith, brought suit against the City of Chicago, Chicago Police Officers Brian Murphy and Robert Kane, and Colleen Murphy, Meghan Mingy, and Mary Malooly. On June 23, 2004, all federal claims against the City were dismissed pursuant to a Release and Settlement Agreement and Stipulation to Dismiss. This Settlement Agreement did not resolve "any issue involving the liability under the state claims against the City of Chicago for any actions or inactions of defendants Robert Kane and Brian Murphy." The agreement permitted the City "to remain a party in this action to protect the City's interests regarding any issue concerning the scope of employment of defendants Brian Murphy and Robert Kane." Presently pending before the Court is the City's Motion for Summary Judgment.

### BACKGROUND

On August 3, 2002, Goldsmith attended a block party on North Octavia Street in the Edison Park neighborhood of Chicago. (Def.'s 56.1(a)(3) Statement ¶ 6). Goldsmith was the only African-American present at the party. (Id., ¶ 7). After midnight, while the party was still going on,

106

Goldsmith and several other males took off their shirts. (Id., ¶ 8). Brian Murphy approached Goldsmith and requested that he put his shirt back on. (Id., ¶ 9; B.M.'s Response ¶ 9)[1]. Goldsmith put his shirt back on. (Def.'s 56.1(a)(3) Statement ¶ 10; B.M.'s Response ¶ 10). Shortly thereafter, in the early morning hours of August 4, 2002, Goldsmith was attacked by various individuals while at the party. (Def.'s 56.1(a)(3) Statement ¶ 10; B.M.'s Response ¶ 10). People screamed, yelled, and shouted racial epithets while Goldsmith was struck. (Def.'s 56.1(a)(3) Statement, ¶¶ 11, 13; B.M.'s Response, ¶¶ 10-11). Goldsmith suffered injuries to his spleen and to one eye as a result of the attack. (Id., ¶ 15). Because of these injuries, Goldsmith was hospitalized for several days. (Id., ¶ 16).

On August 3-4, 2002, Brian Murphy was employed by the City as a police officer. (Def.'s 56.1(a)(3) Statement ¶ 19). However, Brian Murphy was off-duty on August 3-4, 2002, at the time of the incidents alleged in the complaint. (Id., ¶ 20). On August 3-4, 2002, Brian Murphy also attended the block party along the 7300 block of North Octavia Street. (Id., ¶ 21). He arrived at the block party between 9:00 p.m. and 10:00 p.m., wearing casual clothes. (Id., ¶ 23; B.M.'s Response ¶ 23; B.M.'s 56(b)(3)(B) Statement ¶ 3). When Brian Murphy arrived, he saw Murphy, Mingy, Chrissy Noble, Liz Kooy, and Bill Dossas sitting in front of Brian Murphy's parents' residence on North Octavia Street. (B.M.'s 56(b)(3)(B) Statement ¶¶ 2, 5). Brian Murphy also saw Goldsmith across the street with Eric Johnson at Donald Johansen's house. (Id., ¶ 7). While at the block party, Brian Murphy drank alcoholic beverages. (Def.'s 56.1(a)(3) Statement ¶ 24; Plaint.'s Response ¶ 24).

---

[1]Brian Murphy's responses to Plaintiff's statements of facts and Brian Murphy's statements of facts are referenced as "B.M.'s Response" and "B.M.'s 56(b)(3)(B) Statement," respectively.

2

While Brian Murphy was in his parents' house on North Octavia Street, he heard an argument ensue in the street (B.M.'s 56(b)(3)(B) Statement ¶ 9). Brian Murphy ran outside and witnessed men and women swearing and yelling. (Id., ¶ 10). Brian Murphy told the people yelling to go somewhere else. (Id., ¶ 11). A group of people, including Goldsmith, Ryan Friel, Timothy Briski, Mingy, Tom Moran, Kane, and others then continued southbound on Octavia Street towards its intersection with Chase. (Id., ¶ 13). Hoping that the fight would not escalate beyond the yelling and screaming, Brian Murphy followed the crowd to the corner of Chase and Octavia. (Id., ¶ 14). At the corner of Chase and Octavia, Brian Murphy got in between Goldsmith and Kane in an attempt to break up the fight, which he did successfully. (Id., ¶¶ 16, 17).

Brian Murphy cannot say for sure whether he acted as an officer in breaking up the fight and telling the crowd to go somewhere else. (Id., ¶ 18). Goldsmith knew at all times that Brian Murphy was a police officer. (Id., ¶ 19). Brian Murphy did not arrest or take custody of Goldsmith at anytime during the block party (B.M.'s Response ¶ 25). Brian Murphy did not announce himself as a police officer at anytime during the block party or the incidents alleged in the complaint. (Def.'s 56.1(a)(3) Statement ¶ 26). He did, however, identify himself as an off-duty police officer and displayed his police star, which he carried in his wallet out of habit, to the responding officers to the incidents alleged in the complaint. (B.M.'s 56(b)(3)(B) Statement ¶¶ 21, 22). Brian Murphy told the responding officers that there had been an altercation and that he had separated the parties. (Id., ¶23; Def.'s Response ¶ 23). After asking the responding officers if they needed anything else from him, Brian Murphy went back to his parents' house. (B.M.'s 56(b)(3)(B) Statement ¶ 24).

Later, Brian Murphy learned that an argument had started across the street from his parents' house involving Mingy and Goldsmith. (Id., ¶ 25). Brian Murphy, himself, never summoned

Chicago police units to the altercation between Goldsmith and another individual in the early morning hours of August 4, 2002. (Def.'s 56.1(a)(3) Statement ¶ 28).

On August 3-4, 2002, Kane, a Chicago police officer, also attended the block party in the 7300 block of North Octavia as the guest of Mingy. (Def.'s 56.1(a)(3) Statement ¶¶ 31-33). While at the block party, Kane drank alcoholic beverages. (Id., ¶ 34). At no time during the block party did Kane ever arrest Goldsmith or anyone else. (Id., ¶ 35). Kane did not display his police star or any other item identifying him as a police officer, nor did he call for or summon police assistance at any time during the incidents alleged in the complaint. (Id., ¶¶ 36-37). Kane was not carrying his duty weapon or any other backup weapon during the block party at the time of the incidents alleged in the complaint. (Id., ¶ 38).

The Rules and Regulations of the Chicago Police Department, as well as relevant General Orders of the Chicago Police Department, forbid officers from taking police action motivated by racial animus or based on racial bias. (Def.'s 56.1(a)(3) Statement ¶ 39). The General Orders of the Chicago Police Department require an off-duty officer to take some action when he observes a crime being committed (Id., ¶ 40).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury

4

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

The City of Chicago argues that Goldsmith has failed to state a claim against the City under 745 ILCS 10/9-102. While the City included this argument in its Motion for Summary Judgment, it, in essence, is moving to dismiss Goldsmith's claim pursuant to Fed. R. Civ. P 12(b)(6). In reviewing a motion to dismiss, the court considers all allegations in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Dismissal is warranted if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

Section 9-102 provides, in pertinent part, that "A local pubic entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable . . ." 745 ILCS 10/9-102. While Goldsmith has not explicitly charged the City with indemnification under 745 ILCS 10/9-102, Goldsmith has satisfied the requirements of notice pleading. Notice pleading does not require pleadings of legal theories based in case law or statutes, but merely requires a brief description of the claim. *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002). Specifically, the plaintiff's pleadings must

allow the district court to understand the gravamen of the plaintiff's complaint. *Phelan v. City of Chicago*, 347 F.3d 679, 682 (7th Cir. 2003). Moreover, it has been repeatedly emphasized that the civil rules establish notice pleading as the system for this Circuit. *Shah*, 314 F.3d at 282 (citing *e.g. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *Beanstalk Group, Inc. v. AM Gen. Corp.*, 283 F.3d 856, 863 (7th Cir. 2002); *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995)).

Goldsmith's Second Amended Complaint alleges that Brian Murphy was "at all times relevant, acting under color of [his] office as a Chicago police officers [sic]." (Plaintiff's Second Amended Complaint ¶ 3). This is sufficient to give notice to the City that Goldsmith is seeking indemnification for Brian Murphy's actions under the relevant Illinois law.

Next, the City argues that even if a claim has been stated against the City for indemnification of Brian Murphy and Robert Kane, they were never acting within the scope of employment during the incidents alleged in the complaint. Instead, the City alleges that both Brian Murphy and Kane were acting out of purely their own interests in the incidents of August 3-4, 2002, and that, therefore, summary judgment should be granted in favor of the City.

Since there is no precise definition for scope of employment, *Pyne v. Witmer*, 129 Ill.2d 351, 359 (1989), "[t]he Illinois Supreme Court has looked to the Restatement (Second) of Agency § 228 to determine whether conduct of an employee is within the scope of his employment." *Shockley v. Svoboda*, 342 F.3d 736, 739-740 (7th Cir. 2003). Under Illinois law, conduct of a servant is within the scope of employment if: "(1) it is of the kind the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the master. *Pyne v. Witmer*, 129 Ill.2d 351, 360 (1989); *see also Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992). Conversely, it is not within the scope of employment if

it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master." *Shockley*, 342 F.3d at 740 (7th Cir. 2003) (citing *Duffy*, 966 F.2d at 314).

Based on the undisputed facts, genuine issues of material fact exist as to whether Brian Murphy was the "peace-keeper" of the situation, therefore furthering the interest of the City to preserve the peace. Even though it was in Brian Murphy's personal interest to keep the peace in his parents' neighborhood, this does not foreclose that it is not also in the interest of the City. Therefore, Brian Murphy's action of getting between Goldsmith and Kane to keep them from fighting could be construed as a pursuit of the City's interest in keeping the peace or preventing a crime from occurring. Additionally, Brian Murphy is required by the General Orders of the Chicago Police Department to take some action when he observes a crime being committed. Accordingly, genuine issues of material fact exist whether Brian Murphy's action of getting between Goldsmith and Kane was taken to prevent a battery, as required by the General Order of the Chicago Police Department. Likewise, genuine issues of material fact exist whether Kane was acting within the scope of employment on August 3-4, 2002.

## CONCLUSION

For the reasons stated above, the City of Chicago's Motion for Summary Judgment is denied.

Dated: 10-20-04

JOHN W. DARRAH
United States District Judge